**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THOMAS ALBERTO ROBLES,

                Plaintiff,

      v.

HOLY SEE (STATE OF VATICAN
CITY), *et al*,

              Defendants.

Civil Case No. 1:20-cv-02106-VEC

---

**PLAINTIFF'S MEMORANDUM OF LAW
SHOWING CAUSE FOR SUBJECT MATTER JURISDICTION**

---

<u>Counsel on the brief</u>:
Timothy A. Bearb, Esq.
David P. Matthews, Esq.

**MATTHEWS & ASSOCIATES**
David P. Matthews, Esq.
Timothy A. Bearb, Esq. (admitted *pro hac vice*)
Liza K. Roys, Esq. (admitted *pro hac vice*)
2905 Sackett St.
Houston, Texas 77098
(713) 522-5250

**D'ARCY JOHNSON DAY**
Peter W. Smith, Esq.
1501 Broadway, 12th Floor
New York, New York 10036
(866) 327-2952

*Attorneys for Plaintiff, Thomas Alberto Robles*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY AND BACKGROUND .................................................................. 1

ARGUMENT ................................................................................................................................. 2

    1.   **Fed.R.Civ.P. 12(h)(3) Standard for Dismissal of Action *Sua Sponte* by the Court for lack of Subject Matter Jurisdiction** ................................................................................. 2

        a.    **The Court's Subject Matter Jurisdiction over this Case** ........................................ 3

        b.    **Foreign Sovereign Immunities Act** ........................................................................ 4

        i.    **The Tortious Conduct Exception** ........................................................................... 6

        ii.    **Scope of Employment** ............................................................................................. 7

        iii.    **Discretionary Acts** ................................................................................................. 8

        iv.    **Arising Out of Misrepresentation Exception to the Tortious Act Exception** ...... 10

        c.    **The Commercial Activity Exception** .................................................................... 11

**2.    This Court has Supplemental Subject Matter Jurisdiction over the New York Defendants** ............................................................................................................................. 15

        a.    **Supplemental Jurisdiction** .................................................................................... 15

**CONCLUSION** ....................................................................................................................... 18

# TABLE OF AUTHORITIES

Cases

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011) ................ 15
*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434,
   109 S. Ct. 683, 688, 102 L. Ed. 2d 818 (1989) ........................................................................ 5
*Barkanic v. Gen. Admin. of Civil Aviation of Peoples Republic of China*,
822 F.2d 11, 13 (2d Cir. 1987 ...................................................................................................... 11
*Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536,
   108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988) .................................................................... 9
*Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 (3d Cir. 1992)........................... 2
*Cabiri v. Government of Republic of Ghana*, 165 F.3d 193 (2ⁿᵈ Cir. 1999)................................. 10
*Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 241 (2d Cir.1994) ........................ 12
*Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015)........ 2
*Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*,
   79 F. Supp. 2d 374, 379 (S.D.N.Y. 2000) ............................................................................... 5
*Doe v. Holy See*, 557 F.3d 1066, 1090 (9th Cir. 2009).................................................................. 14
*Grissom v. District of Columbia*, 853 F.Supp.2d 118, 127 (D.D.C.2012)................................... 15
*Harmouche v. Consulate Gen. of State of Qatar*, 313 F. Supp. 3d 815, 821 (S.D. Tex. 2018).... 14
*Kozorowski v. Russian Federation,* 124 F.3d 211 (9ᵗʰ Cir. 1997) ............................................... 10
*McFadden v. Washington Metro. Area Transit Auth.*, 168 F. Supp. 3d 100, 107 (D.D.C. 2016) 15
*O'Bryan v. Holy See*, 490 F. Supp. 2d 826, 829 (W.D. Ky. 2005) ................................................ 5
*O'Bryan v. Holy See*, 556 F.3d 361, 375–77 (6th Cir. 2009)..................................................... 3, 7
*O'Bryan*, 556 F.3d at 384-85 ....................................................................................................... 10
*O'Bryan*, 556 F.3d at 386–87 ...................................................................................................... 10
*Republic of Argentina v. Weltover*, 504 U.S. 607, 614,
   112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) .............................................................................. 12
*Riviello v. Waldron*, 47 N.Y.2d 297, 302, 391 N.E.2d 1278, 1281 (1979).................................. 8
*Robinson v. Gov't of Malay.,* 269 F.3d 133, 145 (2d Cir.2001)...................................................... 8
*Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 274–75 (3d Cir. 1980) ......................................... 3
*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 496–97,
   103 S. Ct. 1962, 1973, 76 L. Ed. 2d 81 (1983) ..................................................................... 4
*Virtual Def. & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 1, 4 (D.D.C. 1999) ...... 12


Statutes

28 U.S.C. § 1331................................................................................................................................ 1
28 U.S.C. § 1367(a) ........................................................................................................................ 15
28 U.S.C. § 1602 ............................................................................................................................... 1
28 U.S.C. § 1603(d) ........................................................................................................................ 11
28 U.S.C. § 1605 ............................................................................................................................... 5
28 U.S.C. § 1605(a)(2) ................................................................................................................... 11
28 U.S.C. § 1605(a)(5)(A) ............................................................................................................... 8
28 U.S.C. § 1605(a)(5)(B) ............................................................................................................. 10
28 U.S.C. § 1330................................................................................................................................ 1

28 U.S.C. § 1330(a) .................................................................................................... 3
28 U.S.C. § 1604 ........................................................................................................... 5
28 U.S.C. § 1367(a) ...................................................................................................... 2
28 U.S.C. § 1605(a)(5) .................................................................................................. 6

Rules

Fed.R.Civ.P. 12(h)(3) .............................................................................................. 1, 2
Fed.R.Civ.P. 12(b)(1) ........................................................................................... 1, 2, 3

Other Authorities

Restatement2d. § 317 ................................................................................................. 11

Plaintiff, Thomas Robles, by and through his undersigned counsel submits this memorandum of law in response to the Court's April 17, 2020 Order directing Plaintiff to Show Cause why this Court has Subject Matter Jurisdiction.

## PRELIMINARY STATEMENT

Plaintiff is responding to the Court's Show Cause Order in the frame of a Response to a Fed.R.Civ.P. 12(h)(3) motion. Because subject matter jurisdiction for the Archdiocese, Mt. Carmel Defendants and the Pallottines is supplemental to subject matter jurisdiction of the Holy See, Plaintiff will touch below on all aspects of the subject matter jurisdiction elements below.

## PROCEDURAL HISTORY AND BACKGROUND

On March 10, 2020, Plaintiff filed his Original Complaint, which concerns the repeated acts of sexual abuse committed by Reverend Barry F. Bossa ("Rev. Bossa") against Plaintiff Thomas Alberto Robles, who was a minor at the times of the sexual abuse. Dkt. 3, Original Complaint. During his sexual abuse of Plaintiff, Rev. Bossa was employed by and serving as a Roman Catholic priest for the Defendants, including Defendant Holy See, a sovereign state. Plaintiff's claims are based on the acts and omissions of Our Lady of Mount Carmel Parish, Church of Our Lady of Mt. Carmel, Our Lady of Mt. Carmel Development Corporation, Archdiocese of New York a/k/a Roman Catholic Archdiocese of New York, Archbishop of New York and the Society of the Catholic Apostolate a/k/a Pallottines (hereinafter somethings referred to as "New York Defendants"), Rev. Bossa, and the Holy See.

Plaintiff stated in the original complaint that subject matter jurisdiction existed in this Court as to the Holy See because a federal question existed under 28 U.S.C. §§ 1330, 1331, and with regard to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et. seq (FSIA). *See* Dkt. 3,

¶¶46-47.  Plaintiff also asserted that this court has Supplemental jurisdiction over the New York Defendants pursuant to 28 U.S.C. 1367(a). *Id.*, ¶48.

On April 16, 2020, Defendant Archdiocese of New York filed a letter motion seeking to adjourn the scheduled initial pretrial conference.  Dkt.23.  On April 17, 2020, this Court entered an Order granting the Motion to Adjourn and Ordering Plaintiff to Show Cause why this Court has subjection matter jurisdiction over this case no later than May 1, 2020. Dkt. 27.  Plaintiff now files this Memorandum in support of Plaintiff's Response to the Court's Order to Show Cause and asks that this Court find that Plaintiff has shown that subject matter jurisdiction is proper in this Court under the FSIA and section 1330 against the Holy See and that subject matter jurisdiction is proper in this Court pursuant to section 1367(a) with respect to the New York Defendants.

## **ARGUMENT**

### 1.  **Fed.R.Civ.P. 12(h)(3) Standard for Dismissal of Action *Sua Sponte* by the Court for lack of Subject Matter Jurisdiction**

The Court has Ordered Plaintiff to Show Cause *sua sponte* as provided under Fed.R.Civ.P. 12(h)(3).  That rule states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  This Court should treat a 12(h)(3) Order to Show cause at this stage in the litigation as a facial attack on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).  *See Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 880 (3d Cir. 1992)("The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.")  This District has previously found that "the difference between a motion made under Rule 12(b)(1) and one made under Rule 12(h)(3) 'is largely academic, and the same standards are applicable to both types of motions.'" *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015)

The standard for a Fed.R.Civ.P. 12(b)(1) motion regarding subject matter jurisdiction over the Holy See has been articulated by the Sixth Circuit:

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." And, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true.... If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*O'Bryan v. Holy See*, 556 F.3d 361, 375–77 (6th Cir. 2009)(internal citations omitted). The *O'Bryan* court when on to note that applying the standards in a case brought pursuant to the FSIA[1], there is a burden-shifting process:

In addressing the Holy See's motion to dismiss, the district court explained that "once the *asserted allegations* bring claims within the statutory exceptions to FSIA, the burden then shifts to the party asserting immunity to prove that the exceptions do not apply." *O'Bryan v. Holy See,* 471 F.Supp.2d 784, 791 (W.D.Ky.2007) ("*O'Bryan II*") (citing *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 707–08 (9th Cir.1992)) (emphasis in original).

*Id.* In applying the above standard to a motion to dismiss for lack of subject matter jurisdiction, the Defendants are still required to respond to the allegations of the complaint on a substantive basis.

### a.  The Court's Subject Matter Jurisdiction over this Case

This Court has subject matter jurisdiction over this matter through the combination of several federal statutes. *See* Dkt. 3, ¶¶ 47, 48.  First, 28 U.S.C. 1330(a) provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil

---

[1] "The Foreign Sovereign Immunities Act was not a departure from the Tate Letter. The Act was a codification of the Letter, writing into statutory law the "principle (that) the immunity of a foreign state i**s 'restricted' to suits involving a foreign state's public acts (jure imperii)** and does not extend to suits based on its commercial or private acts (jure gestionis)." H.Rep.No.94-1487, 94th Cong., 2nd Sess. (1976), 5 U.S.Code Cong. & Admin.News, p. 6605." *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 274–75 (3d Cir. 1980) (emphasis added).

action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." The reference to "section 1603(a)" is to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608, *et. seq*. The FSIA governs subject matter jurisdiction for a foreign state in federal courts, without reference to any other federal question. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 496–97, 103 S. Ct. 1962, 1973, 76 L. Ed. 2d 81 (1983)("The Act thus does not merely concern access to the federal courts. Rather, it governs the types of actions for which foreign sovereigns may be held liable in a court in the United States, federal or state. The Act codifies the standards governing foreign sovereign immunity as an aspect of substantive federal law and applying those standards will generally require interpretation of numerous points of federal law.") (internal citations omitted). The Court went on to hold that:

> Congress, pursuant to its unquestioned Article I powers, has enacted a broad statutory framework governing assertions of foreign sovereign immunity. In so doing, Congress deliberately sought to channel cases against foreign sovereigns away from the state courts and into federal courts, thereby reducing the potential for a multiplicity of conflicting results among the courts of the 50 states. The resulting jurisdictional grant is within the bounds of Article III, since every action against a foreign sovereign necessarily involves application of a body of substantive federal law, and accordingly "arises under" federal law, within the meaning of Article III.

*Id.* at 497.

The next parts of the inquiry under the FSIA rubric are whether the Defendant is a foreign state within the meaning of the Act and whether the Plaintiff meets one of the exceptions to immunity within the Act.

**b.  <u>Foreign Sovereign Immunities Act</u>**

The Holy See (Vatican City State) has been recognized by the United States and its courts as a foreign state "since January 10, 1984." *O'Bryan v. Holy See*, 490 F. Supp. 2d 826, 829 (W.D.

Ky. 2005)(internal citations omitted). As such, the FSIA is "the sole basis for obtaining subject matter jurisdiction" over a sovereign such as the Holy See. *See Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 379 (S.D.N.Y. 2000)(citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S. Ct. 683, 688, 102 L. Ed. 2d 818 (1989).

Federal Rules of Civil Procedure "1604 and 1330(a) work in tandem: § 1604 bars federal and state courts from exercising jurisdiction when a foreign state is entitled to immunity, and § 1330(a) confers jurisdiction on district courts to hear suits brought by United States citizens and by aliens when a foreign state is not entitled to immunity." *Amerada Hess Shipping Corp.*, 488 U.S. at 434. The FSIA establishes a jurisdictional framework, including the exceptions to sovereign immunity which allow for subject matter jurisdiction. *See* 28 U.S.C. § 1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.").

28 U.S.C. § 1605 provides certain exceptions to sovereign immunity—that is, the conditions under which the foreign state "shall not be immune from jurisdiction."[2] Plaintiff has alleged that two exceptions to the FSIA apply: the commercial activity exception, and the tortious conduct

---

[2] **(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

**(2)** in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

. . .

**(5)** not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

**(A)** any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

**(B)** any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; . . . 28 U.S.C. 1605(a)(2), (5).

exception.  *See, e.g.* Complaint, ¶¶ 47, 53 and 65.  The application of those two sections to the Holy See are discussed below.

### i. <u>The Tortious Conduct Exception</u>

Plaintiff asserts in his complaint that this case falls within the tortious conduct exception to the FSIA, which provides that "a foreign state shall not be immune from the jurisdiction of the Courts of the United States" in cases:

> (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
>> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
>> (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . .

28 U.S.C. 1605(a)(5).  Thus, the tortious acts exception to the FSIA explicitly provides that subject matter jurisdiction may be had over the Holy See (and thus supplemental jurisdiction over the New York Defendants) where a tortious act or omission is committed by the foreign state, or through its agents and employees while acting within the course and scope of their employment.

Plaintiff's complaint includes allegations of independent acts and omissions of the Holy See, acts and omissions in concert between the Holy See and the New York Defendants, acts of the New York Defendant's based on mandatory policies of the Holy See where such Defendants are employees and/or agents of the Holy Sees, as well as, the independent acts and omissions of the individual New York Defendants with respect to, *inter alia*, warning, supervising, investigating, and controlling of pedophile priests, including Rev. Bossa.

For example, the complaint establishes that the Archbishop, as well as, other agents and employees of the Archdiocese, the Pallottines and the Mt. Carmel defendants, while acting within the course and scope of their employment under the Holy See, failed to act on, or even reveal known information about the dangers of Rev. Bossa to prevent him from sexually abusing Plaintiff. *See e.g.*, Dkt. 3, ¶¶ 18, 26, 32, 35, 47, 52, 53, 117, 129, 131, 133, and 163. As the Sixth Circuit held in *O'Bryan*:

> Thus, the portions of plaintiffs' claims that are based upon the conduct of bishops, archbishops and Holy See personnel while supervising allegedly abusive clergy satisfy all four requirements of the tortious act exception: this conduct served as a substantial cause of the alleged abuse; the conduct occurred in the United States; the conduct was within the scope of employment; and these individuals were, according to the pleadings, Holy See employees.

*O'Bryan*, 556 F.3d at 380–89.   Plaintiff has made all of the above factual allegations throughout the Complaint.  *See e.g.*, Dkt. 3, ¶¶ 75-101.

### ii.   <u>Scope of Employment</u>

One of the four elements of the tortious conduct exception is that the employees and agents of the Holy See were acting in the course and scope of their employment.  Especially with regard to the Archbishop and other supervising clergy, the conduct complained of is not the abuse itself performed by Rev. Bossa, but the failures across multiple organizational levels to stop or protect Plaintiff against such abuse, thereby serving as a proximate cause for such abuse.

Plaintiff has alleged that the Archdiocese agents and employees, the Archbishop, the Pallottines agents and employees, and Mt. Carmel personnel, in addition to the layered employee agent relationships within the New York Defendant's themselves, were also employees and/or agents of the Holy See.  This is because the Holy See (the Pope) has complete and total authority over each Defendant regarding whether they can serve as clergy, and how they can go about implementing the policies of the Holy See.  *See e.g.*, Dkt. 3, ¶ 79 ("Defendant Holy See *alone* had

the sole authority to remove Rev. Bossa from his position as a priest.").  "State law, not federal common law, governs whether an officer's or employee's action is within the scope of employment in determining the applicability of the FSIA." *Robinson v. Gov't of Malay.,* 269 F.3d 133, 145 (2d Cir.2001) (applying New York law).  Under New York law, the basic test for scope of employment is "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions."  *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 391 N.E.2d 1278, 1281 (1979).

Plaintiff has alleged significant facts which show that the personnel of the New York Defendants were all engaged in doing the "master's work" which included, in the case of the Holy See, proliferation of the faith and service to the Holy See and its Catholic Church business enterprise.  *See e.g.* Dkt. 3, ¶¶ 18, 26, 32, 34 and 52.  Taking these allegations as true, Plaintiff has alleged sufficient facts to meet the elements necessary for "scope of employment" of the New York Defendants under the FSIA tortious conduct exception. Plaintiff is alleging acts and omissions by the New York Defendants which caused, facilitated, and/or was a substantial factor in the abuse of Plaintiff by Rev. Bossa.

### iii.  **Discretionary Acts**

The FSIA contains two exceptions to the tortious conduct exception that prevent a finding that the foreign state has lost immunity for a claim of tortious conduct under the statute.  First, the tortious acts exception will not apply to "(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused...." 28 U.S.C. § 1605(a)(5)(A).  The O'Bryan Court described the discretionary function:

> The FSIA does not define "discretionary functions." To interpret the FSIA's discretionary function exception, courts typically apply the interpretation of the discretionary function exception of the Federal Tort Claims Act (the "FTCA"), because "[n]ot only does the language of the FSIA discretionary function exception replicate

> that of the [FTCA], 28 U.S.C. § 2680(a), but the legislative history of the FSIA, in explaining section 1605(a)(5)(A), directs us to the FTCA." *Olsen,* 729 F.2d at 646 (citing H.R. Rep. at 21); *see also Rodriguez v. Republic of Costa Rica,* 297 F.3d 1, 8 (1st Cir.2002); *Office of Consulate Gen. of Nig.,* 830 F.2d at 1026 (9th Cir.1987).

*O'Bryan,* 556 F.3d at 383-84.  To determine whether conduct falls under the FTCA's discretionary function exception, and therefore the FSIA's discretionary function exception, courts apply the two-part test from *Berkovitz v. United States* which first examines "whether the action is a matter of choice for the acting employee." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988).  The discretionary function will not apply to a course of action is specifically prescribed by statute, regulation or policy.  *Id.*  Where an element of choice is found, courts will look to whether "that judgment is of the kind that the discretionary function exception was designed to shield." *Id.*  The Court defines these as "legislative and administrative decisions grounded in social, economic, and political policy. *Id.* at 536-37.

Here, the acts and omissions alleged against the New York Defendants were performed pursuant to mandatory proclamations from the Pope and policies and procedures mandated through policies and procedures, including the 1962 *Crimen sollicitationis*. The *O'Bryan* court analyzed this issue, holding:

> However, although the four requirements are met for these claims, we must still consider whether either of the two exceptions to the tortious act exception applies and prevents its application: the discretionary-function exception and the arising-out-of-misrepresentation-or-deceit exception.

> According to the allegations in plaintiffs' complaint, theories of liability premised upon the supervision of the allegedly abusive clergy do not implicate the discretionary function exception to the tortious act exception because the terms of the supervision were not discretionary. **According to the complaint, the 1962 Policy "impose[d] the highest level of secrecy on the handling of clergy sexual abuse matters." Plaintiffs contend that this required secrecy prohibited Holy See personnel from, among other things, reporting childhood sexual abuse to**

9

**government authorities.** *Id.* **Thus, following the 1962 Policy cannot, on the pleadings in plaintiffs' complaint, be deemed discretionary.** . . .

*O'Bryan*, 556 F.3d at 386–87.  Plaintiff alleged that the Holy See's power over its United States employees and agents is unqualified and touched nearly every portion of the clergy-employees and agents daily life. *See, e.g.* Dkt. 3, ¶¶ 33-37.  Further, the same 1962 policy, under "pain of grave sin" mandated the non-reporting of clergy sexual abuse to *anyone*.

The *O'Bryan* Court found that tortious acts committed by bishops, archbishops and other Holy See personnel while engaged in the supervision of allegedly abusive priests satisfy the requirements of the FSIA's tortious act exception that the tortious act occur in the United States and within the scope of employment.  *Id.* at 386-87.  Further, the acts flowing from the policies and procedures of the *Crimen sollicitationis* and other similar policies are not discretionary.  *Id.*

### iv.  <u>Arising Out of Misrepresentation Exception to the Tortious Act Exception</u>

The second "exception to the exception" is "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; . . ."  28 U.S.C. § 1605(a)(5)(B) "Courts generally have looked to the definition of misrepresentation in the FTCA as a guide for defining the term under the FSIA, relying on the legislative history of the FSIA for such comparison. *O'Bryan*, 556 F.3d at 384-85.  The *O'Bryan* court then distinguished *Kozorowski v. Russian Federation,* 124 F.3d 211 (9th Cir. 1997) and *Cabiri v. Government of Republic of Ghana*, 165 F.3d 193 (2nd Cir. 1999), where the government of Ghana misrepresented her husband's whereabouts which was the sole basis for the emotional distress tort. The Court noted that plaintiffs' claims are not best characterized as stemming directly from the misinformation disseminated by the Holy See. Instead, plaintiffs' claims are more akin to claims of negligent supervision as employees of the Holy See are alleged to have provided inadequate supervision over those under its care. *Id.*, 556 F.3d at 388.  This is true in the instant case in that the

failure to warn Plaintiff about Rev. Bossa, is, at best, one avenue by which Defendants could have

acted.  There are many other avenues of liability asserted by Plaintiff which do not depend on any

communication of information to Plaintiff, much less a misrepresentation.  For example, Plaintiff's

causes of action around supervision and controlling Rev. Bossa pursuant to Restatement 2d. § 317

to prevent harm to Plaintiff would have been reasonable ways in which Defendants could have

avoided liability and those causes of action do not turn on Defendants having made a misrepresen-

tation lie the *Cabiri* case.  As in *O'Bryan*, this Court should find the "misrepresentation" exception

to the tortious conduct exception is inapplicable.

c.   **The Commercial Activity Exception**

The second exception advanced by Plaintiff is the commercial activity exception which

reads as follows:

> A foreign state shall not be immune from the jurisdiction of courts of the United
> States or of the States in any case ... in which the action is based upon a commercial
> activity carried on in the United States by the foreign state; or upon an act per-
> formed in the United States in connection with a commercial activity of the foreign
> state elsewhere; or upon an act outside the territory of the United States in connec-
> tion with a commercial activity of the foreign state elsewhere and that act causes a
> direct effect in the United States. . . .

28 U.S.C.  §  1605(a)(2).  "A 'commercial activity' means either a regular course of commercial

conduct or a particular commercial transaction or act. The commercial character of an activity shall

be determined by reference to the nature of the course of conduct or particular transaction or act,

rather than by reference to its purpose." 28 U.S.C. § 1603(d). There must be a nexus between the

commercial activity and the cause of action. *Barkanic v. Gen. Admin. of Civil Aviation of Peoples*

*Republic of China*, 822 F.2d 11, 13 (2d Cir. 1987. The Supreme Court has further analyzed the

statutory definition of commercial activity, stating that

> [W]hen a foreign government acts, not as regulator of a market, **but in the manner**
> **of a private player within it, the foreign sovereign's actions are "commercial"**

> **within the meaning of the FSIA**. . . .Rather, the issue is whether the particular
> actions that the foreign state performs (whatever the motive behind them) are the
> type of actions by which a private party engages in trade and traffic or commerce.

*Republic of Argentina v. Weltover*, 504 U.S. 607, 614, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)

(internal quotation marks and citations omitted). Indeed, court's have recognized that the legisla-

ture's decision to withhold immunity in cases involving which can be characterized as "essentially

private commercial activities," as described above, "reflects the 'restrictive' theory of sovereign

immunity that underlies the FSIA." *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238,

241 (2d Cir.1994).

"As long as the action with which the suit is concerned could be undertaken by a private

entity, then the action is commercial for the purposes of the FSIA." *Virtual Def. & Dev. Int'l, Inc.

v. Republic of Moldova*, 133 F. Supp. 2d 1, 4 (D.D.C. 1999).  The "business" of the Catholic

Church, as detailed in the complaint, is not unique to a sovereign in the way of traditional govern-

ment activity; instead, it is the same type of commercial activity undertaken by every religious and

many non-profit corporations everyday—inviting donations of time and money, as well as charg-

ing for services, in exchange of furthering the ideological or societal mission of the organization.

Here, Plaintiff has alleged facts explaining the commercial basis for the policies promul-

gated to the New York Defendants and the acts and omissions arising therefrom, upon which

Plaintiff's claims are predicated.  It is the nature of the Church's commercial viability, which is

based on donations, which caused the Holy See and the employees and agents below it to establish

and implement policies which would prevent "scandal" and a tarnishing of the good name of the

church. *See e.g.* Dk. 3, ¶¶ 44, 64.  Further, the entire basis for donations received from parishioners,

and the non-monetary labor provided by, *inter alia*, altar boys is the implicit commercial exchange

in which the Church, including the Holy See and New York Defendants would provide for the

spiritual welfare of the Plaintiff and the protection and maintenance of his eternal sole in exchange for participation in the Archdiocese and/or Parish, to include donations and voluntary labor.

The basis on which this implied contract or trust agreement with parishioners to facilitate the commercial transactions (the giving) could even be offered by the Holy See and New York Defendants is that the clergy were "benevolent and trustworthy stewards of the faith who would only act in the best interests of the children [and other parishioners] whom they serve." Dkt 3., ¶104.  That artifice would not survive in the face of public disclosure of the pedophile priests, the acts and omissions of the New York Defendants and the Holy See, as a substantial factor in allowing such acts to continue to occur.  These types of commercial collection activities and changes of behavior due to considerations of image and scandal are exactly the type of commercial activities that are not peculiar to a sovereign and are often undertaken by private entities, including other Churchs which are not foreign states.  As such, there is a direct nexus between the commercial activities of the Holy See and the failure of its United States agents and employees to take the necessary steps to prevent Rev. Bossa from sexually abusing Plaintiff—steps not taken so as not to invite scandal and thus dampen the giving.

In addition to meeting the commercial acts exception due to the significant, related economic activities the Holy See conduct in the United States, the very act of employing the Archbishop and other clergy, employees and agents is an independent basis for meeting the commercial activity exception. Judge Berzon, dissenting in *Doe v. Holy See* on the basis that the Majority refused to address the issue of the commercial activity exception, spoke to the merits of such an exception and pointed out that "Applying the *Weltover* definition of 'commercial activity,' this Circuit has repeatedly held that an employment relationship between a foreign sovereign and its employee constitutes commercial activity, so long as the employee is not a civil service,

diplomatic, or military employee. *Doe v. Holy See*, 557 F.3d 1066, 1090 (9th Cir. 2009) (Berzon, J., dissenting)(citing *Republic of Argentina v. Weltover*, 504 U.S. at 614); *see also Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002)("the hiring and payment of Plaintiff was a commercial activity for purposes of the FSIA.")

Indeed, the District Court for the Southern District of Texas has recently found that a public relations employee for the Consulate General of State of Qatar had met the commercial activity exception by virtue of his employment alone.  The Court noted that "[]the legislative history to Section 1605 of the FSIA includes employment of public relations agents in its definition of "commercial activity" and states that the employment of American citizens is not governmental in nature, H.R. Rep. 94–1487 at *16. . . ."  *Harmouche v. Consulate Gen. of State of Qatar*, 313 F. Supp. 3d 815, 821 (S.D. Tex. 2018).  The court found it important that the employee "had any role in the creation of government policy and to the extent Plaintiff carried out government policy, his tasks were not discretionary." *Id.* at 822.  The Court held, in deciding whether the employees duties were commercial or governmental in nature that "the ultimate question is whether Plaintiff's job responsibilities "involved the exercise of 'powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Id.* at 821.  Here, when looking to the "nature of the course of conduct, transaction or act, rather than its purpose" with respect to employees like Bishops and other clergymen is simple in that those duties are very similar to those performed by "clergy" from many other Christian religions that do not have foreign state status, and so cannot be considered "peculiar to sovereigns."  *See Id*.

The same conclusion from *Harmouche* can be drawn with regard to the Archbishop and other employees and agents in this case with regard to carrying out the tasks related to sexual abuse by priests in their organizations, pursuant to the 1962 Crimen policy, among others.  As such,

14

Plaintiff has provided two ways in which the Holy See conducted private-type commercial activity in the United States which was directly related to Plaintiff's claims and damages in this case.

**2.   This Court has Supplemental Subject Matter Jurisdiction over the New York Defend-ants**

      **a.   Supplemental Jurisdiction**

Plaintiff also identified in the complaint the basis for subject matter jurisdiction over the New York Defendants: "This Court has supplemental subject matter and personal jurisdiction over the Mt. Carmel Defendants, the Archdiocese, the Archbishop, and the Pallottines pursuant to 28 U.S.C. § 1367(a). Plaintiff's claims against those Defendants are 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]'" Dkt. 3, § 48.  Section 1367 states that, where the district court has original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that in-volve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).  "In order for a federal claim and a state-law claim to form part of the 'same case or controversy,' the claims must derive from a 'common nucleus of operative fact.'" *McFadden v. Washington Metro. Area Transit Auth.*, 168 F. Supp. 3d 100, 107 (D.D.C. 2016). A plaintiff's claims derive from a common nucleus of operative fact if the "claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011); see also *Grissom v. District of Columbia*, 853 F.Supp.2d 118, 127 (D.D.C.2012).

With regard to the interconnected nature of the New York Defendants with the Holy See and the common nucleus of operative fact, Plaintiff's Complaint alleged:

71. In 1962, Defendant Holy See released a document or "instruction" entitled *Crimen Sollicitationis.* This document codified procedures to be followed by bishops and archbishops in cases of clergy members accused of having used the confessional process to make sexual advances to penitents, including minors, as well as, non-confessional sexual conduct with minors. This document requires strict secrecy in such cases, allowing its institutions and employees, including the Church Enterprise defendants herein, to conceal this known problem.

72. Defendant Holy See knew its widespread problem of sexual abuse of minors by clergy members was worldwide, and particularly in the United States, and provided a mandated policy for the Archdiocese, the Archbishop, the Mt. Carmel Defendants, and the Pallottines, which gave its clergy members and institutions the ultimatum of secrecy or excommunication. This in turn created a shroud of secrecy and sequestered priests, such as Rev. Bossa, from consequence.

73. On June 28, 1988, Defendant Holy See issued an apostolic constitution entitled *Pastor Bonus* ("The Good Shepherd") that reiterated the Defendant Holy See's Congregation for the Doctrine of Faith's ("Congregation") absolute power over crimes against morals, including sexual abuse of minors by clergy members.

\* \* \*

**75. Organizations and employees, including the [New York] Defendants named herein fully embraced and implemented the policies and procedures of Defendant Holy See which provided for *mandatory* secrecy of all administrative, legislative, and judicial activities of the Holy See offices and departments under direct authority of the Pope, as well as overall similar activities in the dioceses around the world, including those in the State of New York, specifically the Archdiocese, the Archbishop, the Mt. Carmel Defendants, and the Pallottines**. . . .

Dkt. 3, ¶¶ 72-75. *See also Id.* at ¶¶ 85-87. (emphasis added). Plaintiff has also alleged that the

Archbishop and other clergy were employees and agents of the Holy See acting within the course

and scope of their employment, providing for vicarious liability on the Holy See. *See, e.g. Id.* at

¶¶ 18, 26, and 32.

In addition, the acts and omissions described in the complaint which meet the tortious acts

exception are also, by their nature, the kind of facts that fit the definition of a "common nucleus

of operative facts." The abuse of Plaintiff by Rev. Bossa could be thought of as the *result* of the

common operative facts regarding the failures by the New York Defendants throughout the complaint which caused or allowed it to happen through repeated failures to:

    i.    provide a safe environment for plaintiff, warn Plaintiff about Rev. Bossa, and control Rev. Bossa to prevent abuse (First Cause of Action);

    ii.    train and supervise employees and agents in, *inter alia*, the monitoring and investigation of Rev. Bossa's interaction with Plaintiff (Second Cause of Action);

    iii.    remove Rev. Bossa from contact with children at a time when the New York Defendants knew, or should have known, that he was a danger to children in the church (Second Cause of Action);

    iv.    undertake a course of action, after knowing that Rev. Bossa presented such hazards to children in the church from before his start as a seminarian, which was so free of care and concern for Plaintiff and other children that it amounted to reckless disregard and/or conscious indifference to the Plaintiff's safety (Third Cause of Action); and

    v.    where these acts and omissions, when implemented as employees and agents of the Holy See pursuant to policies like the *Crimen* and stated goals like avoiding scandal or maximizing the "common good" of the Church through lack of transparency, virtually guaranteed that Rev. Bossa would have hundreds of opportunities for private, unfettered access to Plaintiff and others to sexually abuse as he had done before.

*See* Dkt. 3, ¶¶ 66-101. The unreasonable policy and procedure implementations and personnel failures from the Holy See down to the employees and agents at the level of Mt.

Carmel Church are so intertwined as a causative basis for Plaintiff's claims that they are virtually inseparable from each other.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully request that the Court enter an Order finding that Plaintiff has shown sufficient Cause why this Court has subject matter jurisdiction over Plaintiff's claims against the Holy See under the FSIA and against the New York Defendants under supplemental jurisdiction.

**MATTHEWS & ASSOCIATES**

Dated:  Houston, Texas       By:  /s/ Timothy A. Bearb
      May 1, 2020                David P. Matthews, Esq.
                                DMATTHEWS@THEMATTHEWSLAWFIRM.COM
                                Timothy A. Bearb, Esq. (admitted *pro hac vice*)
                                TBEARB@THEMATTHEWSLAWFIRM.COM
                                Liza K. Roys, Esq. (admitted *pro hac vice*)
                                LROYS@THEMATTHEWSLAWFIRM.COM
                                2905 Sackett St.
                                Houston, Texas 77098
                                (713) 522-5250

**D'ARCY JOHNSON DAY**

By:  **/s/ Peter W. Smith**
        Peter W. Smith, Esq.
        1501 Broadway, 12th Floor
        New York, New York 10036
        (866) 327-2952
        PWS@DJD.LAW

*Attorneys for Plaintiff, Thomas Alberto Robles*